UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

MAGALY ARNAU-COLÓN,

   Claimant,

   v.

MICHAEL S. ASTRUE,

   Respondent.

Civil No. 08-2040 (JAF)

**OPINION AND ORDER**

Claimant, Magaly Arnau-Colón, petitions this court under 42 U.S.C. § 405(g) to review the decision of Respondent, Commissioner of Social Security Michael S. Astrue ("Commissioner"), denying Claimant's application for disability benefits. (Docket No. 1.) Commissioner opposes the petition (Docket No. 8), and Claimant replies (Docket No. 9).

I.

**Factual and Procedural History**

We derive the following facts from the parties' filings (Docket Nos. 1; 6; 8; 9) and the record in this case ("R.") (Docket No. 5). Claimant was born on July 4, 1966. (R. at 60, 303.) She completed twelve-grade equivalency and a two-year course in designer sewing. (R. at 304.) She worked from 1989 to 1995 as a tacking-machine operator at a book-bag factory and from 1998 to June 2004 as a sewing-machine operator at a uniform factory. (R. at 90, 305, 313.) On June 10, 2004, Claimant stopped working due to a mental-health crisis. (R. at 307-08.)

Civil No. 08-2040 (JAF)                                                                                                              -2-

Claimant received disability insurance benefits beginning June 10, 2004; these benefits terminate on December 31, 2009. (R. at 46.)

On September 2, 2005, Commissioner determined that Claimant's impairment did not prevent her from working. (R. at 34-39.) Accordingly, Commissioner determined that Claimant was not entitled to disability benefits under the Social Security Act. (Id.) On October 21, 2005, Claimant requested reconsideration of the termination (R. at 33), which Commissioner denied on January 24, 2006 (R. at 28-32).

On February 24, 2006, Claimant requested an administrative hearing before an administrative law judge ("ALJ") (R. at 27), which took place before ALJ Theodore W. Grippo on July 27, 2007 (R. at 21-24). Claimant attended the hearing with counsel and testified regarding her alleged disability. (R. at 300-12.) A vocational expert, Dr. Ariel Cintrón-Andomar, also testified at Claimant's hearing. (See R. at 312-19.) The ALJ and Claimant's counsel posed competing hypothetical situations to Dr. Cintrón, as follows. The ALJ hypothesized an "individual of the same age, education and past relevant work experience" as Claimant, with "moderate" limitations in "daily activities, social functioning and concentration, persistence and steps." (R. at 315.) Dr. Cintrón responded that such an individual would be unable to perform Claimant's past work but would be able to perform a different function in the garment industry, as sorter, a job that existed in substantial numbers in Puerto Rico. (R. at 315-18.) Claimant's counsel, in turn, hypothesized an individual like Claimant except with more

particularized, severe limitations. (See R. at 319.) Dr. Cintrón responded that such an individual would be unable to perform any job in the national economy. (Id.)

The ALJ also had before him a record showing that Claimant suffers from chronic depression, for which she received treatment from psychiatrist Dr. Magaly Johnson-Polanco beginning March 20, 2002, and from clinical psychologist Dr. Hilda Nieves beginning January 22, 2003. (R. at 15.) On June 10, 2004, Claimant had an episode at work that precipitated her hospitalization for severe depression and suicidal intentions. (See R. at 15, 308-11.) From that date, she discontinued work, continued treatment with her psychiatrist and psychologist, and took medications, the effect of which would lessen over time. (R. at 308-12.) She had another episode, this time at home, that precipitated another hospitalization, on March 27, 2005, for severe depression and suicidal intentions. (R. at 15, 311.) As of the hearing, Claimant was continuing with treatment and medication; at that time, she met with her psychiatrist bimonthly, reduced from monthly. (See R. at 308.)

On September 20, 2007, the ALJ rendered a decision finding that Claimant had not been disabled since June 10, 2004. (R. at 8-18.) Proceeding with his analysis under 20 C.F.R. § 404.1520(a), the ALJ found that Claimant suffers from an affective disorder, a medically-determinable impairment, but that said impairment is not severe because it has not, or is not expected to, significantly limit her ability to perform basic work-related activities for twelve consecutive months. (R. at 13.) To reach his conclusion, the ALJ discussed the medical evidence submitted from Claimant's two treating physicians, Drs. Johnson and Nieves. He

Civil No. 08-2040 (JAF)                                                                                          -4-

determined that Dr. Johnson's submission, her report and progress notes, should share equal controlling weight with Dr. Nieves' progress notes.

In so deciding, the ALJ determined that Dr. Johnson's "Medical Source Statement of Ability To Do Work-Related Activities (Mental)" ("Assessment") (R. at 115-16) and Dr. Nieves' report (R. at 187-88) would receive no weight, given their inconsistency with these doctors' other submissions and with the rest of the record evidence. (R. at 15-16.) As to Dr. Johnson's Assessment, the ALJ found that she had provided no clinical or medical findings to support her evaluation; that her progress notes indicated Claimant's "steady improvement"; and that her report's observations regarding, for example, memory and concentration undermines her severity ratings on the Assessment. (R. at 16.) As to Dr. Nieves' report, which diagnosed Claimant with "severe" depression, the ALJ found it "completely at odds" with her progress notes, which, in the header, diagnosed Claimant with "mild" depression. (R. at 15.)

Having afforded these two items zero weight, the ALJ concluded that he must follow the only severity rating from a treating physician on record, Dr. Nieves' progress notes diagnosing "mild" depression. He explained that such a rating seemed consistent with the rest of the record, and in particular the facts that (1) Claimant had worked with the condition for over two years before the alleged onset; (2) the severe period, which he defined as, at most, the length of time including and between the two hospitalizations, lasted under twelve months; and (3) the Disability Determination physicians had found Claimant's condition nonsevere. (R. at 17-18.)

On October 31, 2007, Claimant sought review of the ALJ's decision from the Appeals Council (R. at 297-99), which denied review on August 5, 2008 (R. at 3-7). On September 13, 2008, Claimant filed the present petition in this court seeking review of the ALJ's decision. (Docket No. 1.) Commissioner filed a memorandum of law on February 20, 2009 (Docket No. 8), and Claimant filed a memorandum of law on March 10, 2009 (Docket No. 9).

## II.

## Standard of Review

An individual is disabled under the Social Security Act ("the Act") if she is unable to do her prior work or, "considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d). The Act provides that "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." § 405(g). Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the] conclusion." Irlanda-Ortíz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (internal quotation marks omitted) (quoting Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

We must uphold Commissioner's decision if we determine that substantial evidence supports the ALJ's findings, even if we would have reached a different conclusion had we reviewed the evidence de novo. Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981). In reviewing a denial of benefits, the ALJ must consider all evidence in the

record. 20 C.F.R. § 404.1520(a)(3). Credibility and "[c]onflicts in the evidence are . . . for the [ALJ] - rather than the courts - to resolve." Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 141 (1st Cir. 1987). We reverse the ALJ only if we find that he derived his decision "by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

## III.

### Analysis

Claimant argues that the ALJ erred in assessing the severity of Claimant's depression, especially insofar as he selectively cited the record to support that assessment and failed to document the application of the Psychiatric Review Technique in his decision. (Docket No. 9 at 12-17.)

Section 404.1520a describes a particular technique the ALJ must apply to assess the severity of a claimed mental impairment. See 20 C.F.R. § 404.1520a(a) (explaining need for special technique). The ALJ first must determine whether the claimant has a medically-determinable impairment and, if so, must both "specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment" and "rate the degree of functional limitation resulting from the impairment." § 404.1520a(b). The ALJ must so rate as to four broad functional areas: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. § 404.1520a(c)(3). The ratings for the first three areas are based on a five-point scale (none, mild, moderate, marked, and extreme); the rating

for the fourth area is based on a four-point scale (none, one or two, three, four or more). § 404.1520a(c)(4). If the ALJ rates the limitation in the first three functional areas as "none" or "mild" and in the fourth area as "none," the ALJ will generally conclude that the impairment is not severe. § 404.1520a(d)(1). Otherwise, the ALJ must continue the assessment by determining whether the impairment meets or is equivalent in severity to a listed mental disorder and, if not, assessing the claimant's residual functional capacity. § 404.1520a(d)(2), (3).

The ALJ's "written decision must incorporate the pertinent findings and conclusions based on the technique." § 404.1520a(e)(2). In particular, the decision must show the "significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the functional areas" and must "include a specific finding as to the degree of limitation in each of the function areas." Id.

The ALJ's decision in the instant case does not explicitly describe his decision in terms of the technique described above. (R. at 8-18.) It does, however, find that Claimant suffers from a medically-determinable mental impairment, an affective disorder, and does not include a specific finding as to the degree of limitation in each of the functional areas. (Id.) The ALJ found "no limitation" in all four categories, citing Claimant's report that she "can take care of her personal needs" to support the finding in the first category; Claimant's report that she "goes shopping with her mother" to support the second; and nothing to support the third and fourth. (R. at 18.) Given his ratings, the ALJ found Claimant's condition nonsevere and did not

Civil No. 08-2040 (JAF) -8-

continue the assessment under § 404.1520a(d)(2) and (3). (See R. at 8-18.) On review, we must determine whether substantial evidence supports the ALJ's ratings and thereby justifies his truncation of the assessment.[1] See Irlanda-Ortíz, 955 F.2d at 769.

Upon review of the record, we find the ALJ's rating of all four categories unsupported by substantial evidence. As to the first category, daily living activities, the ALJ found "no limitation" in direct contradiction to reports by Dr. Johnson (R. at 110-14); Dr. Nieves (R. at 187-88, 250-57); and the psychiatrist who, under § 404.1520a(e)(1), completed the Psychiatric Review Technique Form ("PRTF") during the initial review of Claimant's application for benefits (R. at 204-17). Dr. Johnson, in a report given full weight by the ALJ,[2] reported that Claimant was "unable to do household tasks" and could not even get up. (R. at 113-14.) Dr. Nieves, in a report not even mentioned by the ALJ (see R. at 8-18),[3] reported that Claimant

---

[1] The ALJ also states as a general matter that the severity of Claimant's mental impairment is "mild." (R. at 17.) Assuming, however, that the ALJ followed the technique required by § 404.1520a, he had no cause to state a general opinion as to Claimant's condition, and we focus our review instead on his assessment of her degree of limitation in the four functional areas.

[2] The ALJ discussed in his opinion Dr. Johnson's Assessment in which Dr. Johnson rated Claimant's limitation in various work-related categories as "marked." See supra Part I. He afforded the statement no weight, however, finding it inconsistent with Dr. Johnson's progress reports. See id. In so doing, he erred because he substituted his longitudinal view of Claimant's condition for that of her treating physician. See, e.g., 20 C.F.R. § 404.1527(d)(2); Black & Decker Disability Plan v. Nord, 538 U.S. 822, 829 (2003) (describing "treating physician rule"); Leahy v. Raytheon Co., 315 F.3d 11, 20 (1st Cir. 2002) (same).

[3] Failure to consider the report of a treating physician itself constitutes grounds for remand. See Nguyen, 172 F.3d at 35 ("The ALJ [is] not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion."). The ALJ discussed a different report filed by Dr. Nieves, dated January 16, 2006, in which Dr. Nieves wrote that Claimant "maintains the same diagnosis, Recurred Sever[e] Major Depression with Psychotic Features." See supra Part I. He afforded this report no weight, see id., again erroneously substituting his longitudinal view of Claimant's condition

"remains sleeping and isolated in her room all the time . . . [and] cannot engage in any activity." (R. at 255.) Even the nonexamining physician who completed the PRTF marked Claimant's functional limitation in the daily living category as "moderate." (R. at 214.) The ALJ's finding of "no limitation" in this category is simply counter to the evidence in the record.

The ALJ's finding as to the second category, social functioning, is similarly unfounded. Dr. Johnson reported, when asked about Claimant's social functioning, that Claimant neither "initiate[s] social contacts" nor "participate[s] in group activities." (R. at 113.) Dr. Nieves reported that Claimant does not "interact interpersonally . . . [and] does not communicate with anybody" except her mother, who "covers all [Claimant's] needs." (R. at 255.) Here again, the PRTF marked Claimant's functional limitation in this category as "moderate." (R. at 214.)

As to the third category, concentration, persistence, or pace, the ALJ cites no evidence for his determination. (See R. at 18.) This category "refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. pt. 404, subpt. P, app. 1, pt. A, 12.00C(3). The ALJ was to consider, inter alia, mental status examinations such as tasks requiring Claimant to "subtract serial sevens or serial threes from 100" and memory tasks that "must be completed within established time limits." Id. The ALJ is to take "great care" in

---

for that of her treating physician, see supra note 2.

making this assessment, however, recognizing that these examinations may be "less demanding, highly structured, or more supportive" than the normal work environment.  Id.

While the record contains results from such mental status examinations administered by Claimant's treating and examining physicians (see, e.g., R. at 112, 221, 257), the ALJ failed to address them in his decision (see R. at 8-18).  He likewise ignored Dr. Johnson's evaluation that Claimant had "fair attention" but "poor concentration" (R. at 113) and Dr. Nieves' evaluation that Claimant suffered from a "big loss of concentration"; that her "attention levels have been totally affected due to her recurrent anxiety and depression"; and that she "cannot maintain mental focus" (R. at 255-56).  And again the ALJ disregarded the PRTF finding that Claimant's functional limitation in this category is "moderate" (R. at 214), along with that psychiatrist's note that Claimant shows "diminished attention, concentration [and] memory" (R. at 202).

As to the final category, episodes of decompensation, the ALJ failed to cite any support for his determination.  (See R. at 18.)  The category refers to "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning." 20 C.F.R. pt. 404, subpt. P, app. 1, pt. A, 12.00C(4).  The ALJ could infer episodes of decompensation from "medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system . . . ; or other relevant information in the record about the existence, severity, and duration of the episode."  Id.

The record shows that Claimant was hospitalized for her mental impairment twice during a one-year period (see R. at 15); the ALJ references these episodes (id.), but in the context of

noting that, despite their severity, their briefness provides evidence for the overall mildness of Claimant's condition (R. at 17). The ALJ also notes, without citing evidence, that "the claimant may have experienced a brief episode of decompensation" but does not explain how this factored into his conclusion that she had "no limitation" in this fourth category. (R. at 18.)

We do not purport to determine what rating should apply to this category; instead we merely note that there is relevant evidence on the record that ALJ was required both to consider during his determination and to reference in his written decision. For example, Dr. Johnson reported in her progress notes dated October 26, 2004, that Claimant was "having difficulties with family" and "[had] been feeling more depressed than usual lately"; at that appointment, Dr. Johnson increased Claimant's dosage of Tranxene, an antianxiety medication. (See R. at 132.) Similarly, Dr. Johnson noted on January 16, 2006, during another appointment accompanied by an increase in medication, that Claimant "[arrived] early to appointment since apparently has been feeling increasingly depressed lately." (See R. at 138-39.) Dr. Nieves reported in her progress notes on November 12, 2004, that Claimant "is not doing very well" and on March 16, 2005, that Claimant "continues doing very poorly." (R. at 171, 176.) The length and severity of these apparent exacerbations in Claimant's condition are relevant to the fourth category, and the ALJ was required to consider them in his analysis. His disregard of relevant medical evidence, here and throughout his determination, constitutes a direct violation of Nguyen. See supra notes 2-3.

Civil No. 08-2040 (JAF)                                                                                              -12-

For the reasons stated above, we find that the ALJ's disability determination lacks basis in substantial evidence. See 42 U.S.C. § 405(g). Where an ALJ's decision is undermined by infirmities in evidentiary support, the usual remedy is to remand for further consideration of relevant medical records. See Seavey v. Barnhart, 276 F.3d 1, 12-13 (1st Cir. 2001) (noting that two avenues for remand exist under the fourth and sixth sentences of 42 U.S.C. § 405(g)).

### III.

### Conclusion

In view of the foregoing, we hereby **VACATE** Commissioner's determination. We **GRANT** Claimant's petition (Docket No. 1) and **REMAND** the case to Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for findings not inconsistent with this opinion.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 22nd day of December, 2009.

                                                               s/José Antonio Fusté  
                                                               JOSE ANTONIO FUSTE  
                                                               Chief U.S. District Judge